THE STATE, VICTOR PIARD AND OTHERS, PROSECUTORS, v. THE MAYOR AND COMMON COUNCIL OF JERSEY CITY.

SAME v. THE WATER COMMISSIONERS OF JERSEY CITY.

1. The water commissioners of Jersey City are authorized to execute the plan of sewerage adopted by them, "with such changes or alterations as may be found convenient or necessary in the progress of the work;" if the general plan contemplated the use of an old sewer, the commissioners, if they find it convenient and necessary, may abandon that part of the plan, and construct a new sewer in place of the old one Of this the commissioners are the sole judges, and having acted thereon, this court has no authority to review their decision.

2. The charter requires the signature of the mayor to all resolutions affecting the interests of the city: *held*, that a resolution of the com-

mon council referring a petition for a sewer to the committee on sewerage does not require the signature of the mayor.

3. By the act of 1854, (*Laws* 1854, 404,) the legislature intended, after the general plan of sewerage was adopted by the city, to secure the execution of it by the water commissioners, and to take from the mayor and common council all duties and authority respecting it, except on application, after giving notice and hearing objections, to determine *the time when* the work, or any part of it should be done.

On *certiorari* to review proceedings of the common council and the water commissioners of Jersey City.

For the plaintiff, *I. W. Scudder*.

For the defendant, ——— ———.

The opinion of the court was delivered by

BROWN, J. These *certioraris* bring up for review the proceedings of the common council and the water commissioners of Jersey City, in relation to the construction of the Grand street sewer, and the assessment of the expenses of the same upon the owners of property.

The first reason assigned on the argument was, that the proposition for the improvement, as made in the petition, was vague.

This reason is not supported by the facts. The *termini* of the sewer are stated in the petition, its connections, the mode of finishing, and lateral sewers, the whole to be done according to the general plan of sewerage. The city had previously adopted a general plan of sewerage, and the same had been sanctioned by law. The proposition, taken in connection with the reference to this plan, seems sufficiently definite.

The next point made against the proceedings was, that the proposition for a new sewer in Grand street was a departure from the plan of sewerage referred to; that the plan adopted an existing sewer as part of it, and this proposition was for a new sewer. I have not the means before me of ascertaining the fact as to this; but the application is made

for a work to be done according to the general plan of sewerage, and the order of the common council directing the water commissioners to proceed with the work contains, also, a direction that the whole shall conform to the general plan of city sewerage. If the water commissioners have departed from that plan, it is not therefore by the order of the common council, but by their own authority. The legislation respecting the sewerage of Jersey City gives to the water commissioners authority to execute the plan, "with such changes or alterations as may be found convenient or necessary in the progress of the work." *Laws of* 1854, 403, § 1. If the general plan contemplated the use of an old sewer, it is manifest that, in attempting to execute it, the commissioners might find it convenient and necessary to abandon that part of the plan, and construct a new sewer in place of the old. Of this the commissioners are the sole judges, and having acted upon their judgment, this court has no authority to review their decision. This point was considered by the Court of Errors and Appeals in the case of *The State, Vanderbeck and others, prosecutors,* v. *Jersey City,* 5 *Dutcher* 441, and several material departures from the general plan held not to be fatal to the proceedings and assessment. The opinion of the court was read by the Chancellor, and the power of the commissioners so to vary the work fully sustained.

Again, it is objected that the notice to persons interested required objections in writing, when they were by the charter entitled to a hearing.

It appears, by the return, that two notices were given, one for a hearing before the committee on sewers, and the other for objections in writing to be made to the common council; the latter was not required, but the proceedings are not therefore invalid. The hearing was not limited to objections in writing.

Again, it is objected that the resolution, passed April 7th, 1857, by the council, referring the petition to the committee on sewerage, was not signed by the mayor. The charter requires the signature of the mayor to all resolutions affect-

ing the interests of the city. As the city at large pays no part of the expenses of this improvement, and only a portion is benefited by it, it cannot be said that such a resolution affects the interests of the city.

Several objections are taken to other proceedings of the council which seem to have been necessary, and if so, these objections need not be considered.

By the supplement to the act to authorize the construction of works for the supplying of Jersey City with water, passed March 16th, 1854, *Laws*, 403, § 3, it is provided, that when application shall be made to the council to have a sewer constructed, the same preliminary proceedings shall be had as are now authorized by the charter; and if the council, after consideration of the application and objections, shall decide that the sewer ought to be constructed, they shall give notice in writing of such decision to the water commissioners, who shall thereupon proceed to construct the same. The preliminary proceedings here referred to are those only which precede the decision of the council that the sewer should be constructed; and this decision, by the charter, is to follow immediately upon the hearing of objections to the proposition, on notice of time and place for that purpose. This appears clearly by reference to the 55th section of the charter (*Laws* 1951, 416.) It is there enacted that, when any application shall be made for constructing sewers, the council shall appoint a time when persons interested therein may be heard before them, or the appropriate committee, on the merits of such application, and shall give notice, &c.; and if the council shall determine to construct such sewers, they shall appoint commissioners to assess the cost upon the lands benefited, &c. This section further provides, that if a remonstrance be filed by one-half of the owners of the lands assessed the council shall proceed no further; and if no remonstrance, then the work shall be done and the assessments paid. It provides also an appeal for any landholder who is dissatisfied. All these proceedings for assessment of cost upon lands benefited are repealed, so far as respects the construction of sewers. No commissioners should be appointed,

and a remonstrance of the owners would be of no avail.  By the act of 1854, above referred to, as soon as the council shall determine to construct the sewer they are (not to appoint commissioners) but to give notice in writing to the water commissioners, who are thereupon to proceed to construct the same; and when constructed, by section 4th of the same act, the water commissioners (not commissioners appointed by council) are to assess, not according to benefits, but in proportion to dimensions, without reference to situation or value.  It is quite clear that the legislature intended, after the general plan of sewerage was adopted by the city, to confirm it by law, to secure the execution of it by the water commissioners, and to take from the mayor and common council all duties and authority respecting it, except on application, after giving notice and hearing objections, to determine *the time when* the work, or any part of it, should be done.  In these particulars the law has been complied with, and whatever else may have been erroneously done furnishes no reason for setting aside these proceedings.  The objection, that the property had been assessed for the old sewer, and ought not therefore to be again assessed, is answered by the case of *The State, Vanderbeck and others, prosecutors*, v. *Jersey City*, above referred to.

Proceedings confirmed.

Cited in *State, Fiacre et al., pros.*, v. *Mayor, &c., of Jersry City*, 5 *Vroom* 279.